# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

GWEN D. MICKERSON,

    Plaintiff,

    v.

AMERICAN BROKERS CONDUIT,
EMC MORTGAGE CORPORATION,
STRUCTURED ASSET MORTGAGE
INVESTMENTS II, INC.,
CITIBANK, N.A.,
WELLS FARGO BANK, N.A.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM and
DOES 1 THROUGH 100,

    Defendants.

Civil Action No. TDC-17-1106

## MEMORANDUM OPINION

Plaintiff Gwen D. Mickerson, who is self-represented, has filed suit asserting actions arising out of an attempted foreclosure on her residence. She alleges multiple state common law claims and a violation of the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401 to 7-409 (2015), against Defendants Americans Brokers Conduit ("ABC"); EMC Mortgage Corporation ("EMC"); Structured Asset Mortgage Investments II, Inc. ("SAMI"); Citibank, N.A.; Wells Fargo Bank, N.A. ("Wells Fargo"); the Mortgage Electronic Registration System ("MERS"); and Does 1 through 100. Pending before the Court is a Motion to Dismiss, joined by all Defendants except ABC and EMC, neither of which has entered an appearance in the case. No hearing is necessary to resolve this Motion. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

On July 13, 2007, Mickerson received a $560,000 loan from Defendant ABC by signing a promissory note ("the Note"). The Note was secured by a Deed of Trust ("the Deed") on her residence on Tree Leaf Court in Upper Marlboro, Maryland ("the Property"). The Deed names Defendant MERS as the beneficiary and as the nominee for ABC. The Deed also states that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to [Mickerson]." Deed ¶ 20, Compl. Ex. B at 12, ECF No. 2-3.

Mickerson alleges that "after the signing of the Note and Deed of Trust, the Note was sold, transferred, assigned and securitized" into a mortgage-based security, the Structured Asset Mortgage Investments II Trust 2007-AR7 ("the Trust").[1] Defendant SAMI is the depositor for the Trust, and Defendant EMC acts as the Trust's sponsor and as the servicer for the mortgages in the Trust. According to Mickerson, the Trust closed on September 18, 2007, after which it could no longer accept new mortgages. Mickerson alleges that Defendants do not have any documentation memorializing the sale of the Note to the Trust. Over five years later, on October 12, 2012, MERS, as nominee for ABC, executed an Assignment of the Deed ("the Assignment") to Defendant Citibank, which was at that time the trustee for the Trust. The Assignment was recorded with the Prince George's County Land Records Department.

---

[1] A "mortgage-backed security" is created when, through a process known as "securitization," a financial institution purchases a mortgage from the original lender and pools that mortgage with others into an investment instrument that can be sold. *See Montgomery Cty., Md. v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 918 (4th Cir. 2014); *Deutsche Bank Nat'l Tr. Co. v. Brock*, 63 A.3d 40, 42 (Md. 2013).

Meanwhile, in September 2008, Mickerson filed for bankruptcy under Chapter 7 of the Bankruptcy Code.[2] Voluntary Pet'n, *In re Hamilton*, No. 08-22212 (Bankr. D. Md. 2009) (Dkt. No. 1). Citibank promptly asked the bankruptcy court to lift the automatic stay so that it could institute foreclosure proceedings. Mot. for Relief from Stay, *In re Hamilton*, No. 08-22212 (Bankr. D. Md. 2009) (Dkt. No. 11). The bankruptcy court granted Citibank's motion on October 23, 2008. Order, *In re Hamilton*, No. 08-22212 (Bankr. D. Md. 2009) (Dkt. No. 14). The bankruptcy court issued an order of discharge on January 6, 2009. Order Discharging Debtor, *In re Hamilton*, No. 08-22212 (Bankr. D. Md. 2009) (Dkt. No. 18).

Foreclosure actions were instituted against the Property in March 2009, December 2009, and November 2015. For reasons not explained in the record, each of those actions was dismissed without a foreclosure sale. The November 2015 foreclosure action was dismissed on November 10, 2016. Mickerson appears to still live at the Property.

On March 3, 2017, Mickerson filed this lawsuit in the Circuit Court for Prince George's County, Maryland, along with a Motion for Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief. The case was timely removed to this Court, which declined to issue preliminary relief because Mickerson failed to show a likelihood of success on the merits of her claims. Mickerson then filed an Amended Complaint, which alleges ten counts: (1) lack of standing to foreclose; (2) fraud in the concealment; (3) a violation of the MMFPA; (4) unconscionable contract; (5) breach of contract; (6) breach of fiduciary duty; (7) quiet title; (8) slander of title; (9) unjust enrichment; and (10) declaratory relief. All of these claims emerge

---

[2] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the docket in Mickerson's bankruptcy case and the dockets in Mickerson's foreclosure cases in the Circuit Court for Prince George's County, Maryland, *Rosenberg v. Mickerson*, Case No. CAE09-06482, *Rosenberg v. Mickerson*, No. CAE09-38402, and *GSISFLG v. Mickerson*, No. CAEF15-35156, available through the Maryland Judiciary's website at http://casesearch.courts.state.md.us.

from Mickerson's argument that the Note was not properly assigned to the Trust. She argues that this improper transfer broke the chain of title, prevents Defendants from foreclosing on the Property, and entitles her to a declaratory judgment that she alone has rights to the Property. She also argues that, by asserting their rights to the Property and by purporting to transfer the Note to the Trust, Defendants committed fraud that entitles her to damages.

Defendants SAMI, Citibank, Wells Fargo, and MERS (collectively, the "Moving Defendants") have filed the pending Motion to Dismiss. Defendant EMC was served on March 23, 2017 but has not filed an Answer or other responsive pleading in this case. The record contains no proof that Defendant ABC was ever served.

## DISCUSSION

The Moving Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They assert that Mickerson's causes of action must fail because she has provided no plausible legal or factual basis to substantiate her claims.

### I. Legal Standards

A party may move for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). The plaintiff has the burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

4

plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Documents attached to the complaint or motion may be considered if "they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The court may also take judicial notice of matters of public record, such as state court proceedings and property records. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Because the Court's jurisdiction here is based on diversity, the Court relies on state law, in this case Maryland law, to resolve the pending issues. *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).

## II. ABC and Wells Fargo

Counts II, IV, and VI, consisting of claims for fraud in the concealment, unconscionable contract, and breach of fiduciary duty, are asserted against only ABC. Count V, Mickerson's breach of contract claim, is asserted against ABC and MERS only. Mickerson pleaded her remaining claims against all Defendants.

On January 13, 2018, this Court issued an Order to Show Cause, requiring Mickerson to provide proof of service for ABC or good cause for her failure to do so within 14 days. ECF No. 30. In response, Mickerson filed tracking information from the United States Postal Service showing that her attempt to serve ABC through certified mail failed because ABC had moved and left no forwarding address. ECF No. 32. The Moving Defendants represent that ABC no

longer exists, having dissolved in November 2010 after filing for bankruptcy. Notice of Removal ¶ 10, ECF No. 1. In the absence of proper service, the Court will dismiss Counts II, IV, and VI in their entirety and all other claims against ABC.

Mickerson has made no factual allegations regarding Defendant Wells Fargo in either her original Complaint or her Amended Complaint, not even to explain what relationship, if any, Wells Fargo has to the Note and Deed that are the subjects of this case. To the extent that Mickerson intended for her claims against "All Defendants" to be asserted against Wells Fargo, she has failed to state a plausible claim against that Defendant. The claims against Wells Fargo are also dismissed.

### III.    Counts I, VII, X:  Standing, Quiet Title, and Declaratory Relief

In Count I, Mickerson alleges that Defendants lack standing to foreclose on her property. She argues that Defendants "cannot prove" that they have a valid legal interest in her mortgage and asks this Court to "find that the purported power of sale contained in the Deed of Trust is a nullity." Am. Compl. ¶¶ 67–68, ECF No. 23. Relatedly, in Count VII, through a quiet title action, she requests an injunction prohibiting Defendants from asserting a claim to the Property that is contrary to her own, and in Count X, she asks for a declaratory judgment that all rights and interest in the Property are vested in her alone.

The Court notes preliminarily that Mickerson's lack of standing claim is "not an affirmative cause of action" but a defense that Mickerson could raise in a state foreclosure proceeding. *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 516 n.9 (D. Md. 2016). "[A]fter confronting this precise issue on multiple occasions, courts in this district have repeatedly concluded that a claim for lack of standing is not viable where a defendant has not sought affirmative relief." *Heaney v. Quicken Loans, Inc.*, No. JFM-14-1002, 2014 WL

4686682, at *3 (D. Md. Sept. 16, 2014) (listing cases). Defendants here have not sought any affirmative relief; they are merely responding to claims made against them. There is not even a pending state foreclosure action against the Property; the last foreclosure action was dismissed in November 2016. The Court therefore dismisses Count I because it is just an extension of her requests for injunctive and declaratory relief in Counts VII and X. *See Parker*, 179 F. Supp. 3d at 516 n.6 (construing a lack of standing claim as a request for declaratory and injunctive relief).

A quiet title action enables a plaintiff possessing real property to challenge the validity of, as relevant here, a defendant's claim "to hold any lien encumbrance" on that same property, provided that there is not already a pending lawsuit to enforce the lien. Md. Code Ann., Real Prop. § 14-108(a). A plaintiff bringing a quiet title action must show a valid claim of entitlement to the property at issue, which requires that the plaintiff establish both possession of the property and "legal title by 'clear proof.'" *Porter v. Schaffer*, 728 A.2d 755, 766–67 (Md. Ct. Spec. App. 1999) (quoting *Stewart v. May*, 73 A. 460 (Md. 1909)).

Maryland law also provides for the issuance of a declaratory judgment for plaintiffs seeking a ruling on the validity of land records and other legal documents:

> Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract . . . may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

Md. Code Ann., Cts. & Jud. Proc. § 3-406 (2011). Under this section, it is within the sound discretion of the court to decide whether a declaratory judgment should be granted. *See Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 849 (Md. 1975).

To support her claims, Mickerson first argues that ABC, the original lender, did not engage in a "True Sale" of the Note to EMC, the Trust's sponsor and mortgage servicer. She

7

claims that this failure caused "a clear break in the chain of title." Am. Compl. ¶ 24. Second, she contends that MERS, which executed the Assignment of the Deed of Trust in 2012 on ABC's behalf, had no legal right to transfer the Deed to the Trust. Third, she argues that there are no documents that prove that the Note was securitized before the Trust closed on September 18, 2007, after which it could no longer accept additional mortgages. To the extent that Defendants rely on the Assignment of the Deed by MERS, which was dated October 12, 2012 and recorded on March 7, 2013, Mickerson points out that the Assignment was filed over five years after the Trust closed. Thus, all of Mickerson's arguments condense into the claim that the Trust does not have a legal right to the Property because the Note and Deed were not properly transferred to the Trust.

The Court will dismiss Mickerson's claims for quiet title and a declaratory judgment. Both of these claims dispute the manner in which ABC, or its agent, transferred the Note and Deed to the Trust. Mickerson, however, lacks standing to challenge the validity of this transfer. District courts may consider the issue of prudential standing *sua sponte*. *See, e.g.*, *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) (holding that prudential standing is jurisdictional and should be raised *sua sponte*); *Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994). State contract law governs whether a plaintiff can challenge a mortgage assignment. *See Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam). In Maryland, only a party or third-party beneficiary to a contract can sue to enforce the terms of that contract. *120 W Fayette St., LLLP v. Mayor & City Council of Balt.*, 43 A.3d 355, 368 (Md. 2012). Here, Mickerson does not and cannot allege that she is a party to, or an intended third-party beneficiary of, the allegedly improper transfer to the Trust of ABC's interest in the Note and Deed. Indeed, the transfer did not affect Mickerson's rights at all because,

regardless of the transfer's validity, she "still has an obligation under the note to make payments." *Wolf*, 512 F. App'x at 342. The transfer only affects to whom she must make those payments. She therefore has no standing to challenge it. *See Pena v. HSBC Bank USA*, 633 F. App'x 580, 583 (4th Cir. 2015) (finding that the plaintiff mortgagors lacked standing to challenge the validity of the assignment of the deed of trust); *Wolf*, 512 F. App'x at 342 (finding that the plaintiff mortgagor did not have standing to challenge the validity of the assignment of the note); *Staton v. Fed. Nat'l Mortgage Ass'n*, No. MAB-14-2155, 2015 WL 13611834, at *5–6 (D. Md. Jan. 9, 2015) (holding that the plaintiff lacked standing to bring a declaratory judgment or quiet title action premised on the argument that his mortgage was invalidly assigned); *In re Ademiluyi*, No. JFM-15-0777, 2015 WL 10684880, at *1 (D. Md. Sept. 29, 2015) (finding that the plaintiff lacked standing to bring a declaratory judgment action challenging the assignment of her mortgage), *aff'd* 642 F. App'x 289 (4th Cir. 2016).

Even if Mickerson had standing to advance these claims, she has failed to identify a plausible basis to conclude that the transfer of ownership interests from ABC to the Trust was invalid. First, her assertion that ABC did not transfer its interest through a "True Sale," a term which appears to refer to a legally valid transfer, is speculative. Notably, she admits that a transfer of the Note did occur, and in her breach of contract claim, she asserts that ABC was paid in full for the Note at the time of the transfer. Second, Mickerson's argument that the transfer is a "legal nullity" because the Note and Deed of Trust were separated and not transferred together is unavailing. Am. Compl. ¶¶ 34–35. Courts have consistently held that, under Maryland law, a transferred note "carries with it the security provided by the deed of trust." *Anderson v. Burson*, 35 A.3d 452, 460 (Md. 2011); *see also Deutsche Bank Nat'l Trust Co. v. Brock*, 63 A.3d 40, 48 (Md. 2013). Thus, the assignment of the Note to the Trust necessarily carried with it the security

9

interest in the Deed. Accordingly, Mickerson's claim that the documented Assignment of the Deed in 2012, more than five years after the Trust closed, is proof of the transfer's invalidity is incorrect, because the security interest had already been transferred at the time of the assignment of the Note. *Id.*; *Svrcek v. Rosenberg*, 40 A.3d 494, 507–08 (Md. Ct. Spec. App. 2012) (holding that an assignment of a deed of trust executed and recorded in 2009, after the closing of a securitization trust, was "of no consequence" because the note was transferred into a securitization pool in 2006, at which time the right to enforce the deed of trust had followed); *see also Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 91 (2d Cir. 2014) (holding, under New York and California law, that a mortgage recorded after the closing date of a securitization trust was not void because when the note was assigned, the "mortgage passe[d] with the debt as an inseparable incident").

Finally, Mickerson's claim that MERS had no legal authority to transfer the Deed is unsupported. Here, the Deed specifically provides that MERS could act as a nominee for ABC, such that ABC could use MERS to transfer its interest in the Property. By signing the Deed, Mickerson consented to ABC's use of the MERS system. Courts have regularly upheld the use of MERS in such a role. *See Anderson*, 35 A.3d at 456; *see also McNeil v. Bank of America*, No. DKC-13-2162, 2014 WL 1831115, at *5 (D. Md. May 7, 2014); *Parker v. Deutsche Bank Nat'l Trust Co.*, No. WMN-12-3358, 2013 WL 1390004, at *3 (D. Md. Apr. 3, 2013).

Thus, even if Mickerson had standing to challenge the transfer, she has failed to allege sufficient facts or a plausible legal theory under which this Court could determine that she alone has rights or interest in the Property. The Court will therefore dismiss Count I (lack of standing), Count VII (quiet title), and Count X (declaratory judgment).

## IV.  Counts III and VIII:  MMFPA and Slander of Title

Mickerson's claims for fraudulent misrepresentation in violation of the MMFPA and slander of title similarly fail because both of these claims require plausible allegations that the Defendants made false representations about the Trust's ownership of the Note and Deed.

The MMFPA bars mortgage fraud, including knowingly making or using "any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that" the statement or omission "be relied on by" the borrower, or "knowingly creating or producing a document for use during the mortgage lending process" containing such a misstatement or omission with such intent.  Md. Code Ann., Real Prop. § 7-401(d).  To state a claim for fraudulent misrepresentation, a plaintiff must show that the defendant knowingly or recklessly made a false representation to the plaintiff with the intent to defraud the plaintiff, and that the plaintiff's reasonable reliance upon that misrepresentation caused her compensable injury.  *See Ademiluyi v. PennyMac Mort. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 530–32 (D. Md. 2013).  To state a claim of slander of title, the plaintiff must show that the defendant maliciously published a false statement derogatory of the plaintiff's title to property, causing special damages.  *Rounds v. Md.-Nat'l Capital Park & Planning Comm'n*, 109 A.3d 639, 663 (Md. 2015); *Beane v. McMullen*, 291 A.2d 37, 49 (Md. 1972).

In support of the MMFPA claim, Mickerson alleges that the Defendants "intentionally misrepresented" that they "were entitled to exercise the power of sale provision contained in the Deed of Trust" and "knowingly and fraudulently misrepresented that they are the 'holder and owner'" of the Note and Deed.  Am. Compl. ¶¶ 102, 105.  As for the slander of title claim, Mickerson alleges that Defendants are liable because they knowingly recorded the Assignment, which she calls "falsified" and "fraudulent."  Am. Compl. ¶¶ 147–49.

11

As discussed above, Mickerson has failed to allege facts or provide any plausible legal theory that would cast doubt over the Trust's ownership of the Note and Deed. In particular, where Mickerson lacks standing to contest the assignment of the Note to the Trust, and the transfer of the Note automatically carried with it the security interest of the Deed, such that the later formal assignment of the Deed did not invalidate the transfer, Mickerson's claims that Defendants made false or fraudulent statements regarding their rights relating to the Note, Deed, and Property, or engaged in slander of title, cannot succeed. *See supra* part III. Likewise, because no plausible theory has been offered to invalidate Defendants' asserted rights, Mickerson's claim that Defendants misrepresented their right to exercise the power of sale provision in the Deed of Trust necessarily fails.

Finally, Mickerson's claim that Defendants engaged in fraud by concealing the terms of the securitization does not state a plausible claim for relief. The Deed specifically provides that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Deed ¶ 20. Where Mickerson agreed to this provision without conditions, she cannot plausibly assert that the terms of the securitization were material facts which had to be disclosed to her. Counts III and VIII will therefore be dismissed.

## V. Count V: Breach of Contract

Mickerson has asserted a claim for breach of contract, alleging that MERS violated the "Release" provision in the Deed, when it did not release her obligations under the Note after ABC sold the Note. Under Maryland law, "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). "The formation of a contract requires mutual assent (offer and acceptance), an agreement

definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of America*, 392 F.3d 114, 123 (4th Cir. 2004) (citing *Peer v. First Fed. Sav. & Loan Ass'n of Cumberland*, 331 A.2d 299, 301 (Md. 1975)).

Paragraph 23 of the Deed states in relevant part: "Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note 'paid' and return the Note to Borrower." Deed ¶ 23. Mickerson argues that once the Note was sold to the Trust and ABC received payment in full, MERS, as ABC's agent, was required to release her from any further obligations under the Note. Mickerson's argument is based on a misunderstanding of the Deed's terms. Paragraph 23's reference to a release of Note "[u]pon payment of all sums secured by this Security Instrument" refers to Mickerson's repayment of the full amount owed under the Note. *Id.* Where Mickerson has not, and likely cannot, plead that she has repaid the loan in full, she has failed to allege a plausible claim for breach of contract relating to this provision of the Deed.

## VI.   Count IX: Unjust Enrichment

Mickerson has also asserted a claim for unjust enrichment. In support of that claim, she alleges that her obligations under the Note were discharged in bankruptcy in 2009, but that when Defendants continued to seek payments from her, she made three additional payments "in an effort to save her home." Am. Compl. ¶ 156. She argues that it is "inequitable" for Defendants to retain those payments to which they were not entitled. *Id.* ¶ 165.

To state a claim for unjust enrichment under Maryland law, the plaintiff must allege that the defendant received a benefit from the plaintiff, that the defendant had knowledge of the benefit, and that the acceptance or retention of the benefit without payment would be inequitable. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007).

This claim, too, fails because creditors retain rights to mortgaged property even after the borrower's Chapter 7 bankruptcy discharge. As the United States Supreme Court has explained:

> A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. However, such a discharge extinguishes *only* "the personal liability of the debtor." Codifying the rule of *Long v. Bullard*, 117 U.S. 617 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.

*Johnson v. Home State Bank*, 501 U.S. 78, 82–83 (1991) (internal citations omitted).

Thus, Mickerson's bankruptcy discharge did not extinguish Defendants' right to enforce the Note through foreclosure. They could require that Mickerson continue to make payments on the Note as a condition of refraining from foreclosing on the Property. Indeed, at this point, no foreclosure sale has ever occurred. Thus, to the extent that Mickerson made additional payments in order to remain on the Property and avoid foreclosure for a certain period of time, there is nothing inequitable or unjust about Defendants' retention of those payments. Notably, Mickerson has not in any way alleged that Defendants coerced or threatened her into making these three payments. Her claim for unjust enrichment will therefore be dismissed.

## VII. EMC

As discussed above, the Court concludes that Mickerson has failed to state a claim for relief, such that all claims against the Moving Defendants, as well as ABC, will be dismissed. The Court now addresses Mickerson's claims against EMC, the only remaining Defendant, which was served with process on March 23, 2017 but has failed to file any responsive pleading or to have counsel enter an appearance in this case.

Ordinarily, the proper course of action when a defendant fails to plead or otherwise defend is for the plaintiff to seek a default judgment. Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). It remains for the court to determine whether the factual allegations constitute a legitimate cause of action. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688 (3d ed. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

Here, the Court is already dismissing all claims against all Defendants except EMC, the one Defendant that has failed to plead or otherwise defend. In *Frow v. De La Vega*, 82 U.S. 552 (1872), the Supreme Court cautioned against allowing a case with multiple defendants to result in diverging judgments. *Id.* at 554. In *Frow*, a defendant failed to defend against a joint fraud charge, and a default judgment was entered against him. *Id.* at 553. The remaining defendants contested the charge and eventually prevailed, resulting in a dismissal of the fraud charges

15

against them. *Id.* The Supreme Court called the resulting situation, in which one judgment suggested the parties were liable of joint fraud, and the other cleared them of the claim, "unseemly and absurd, as well as unauthorized by law." *Id.* To remedy this situation, *Frow* held that the resolution of the case should apply equally to the defaulted party and the other defendants. *Id.* ("[I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others.").

Although *Frow* is controlling only in cases of joint liability, its principles apply to any situation where defendants are similarly situated. *See United States for the Use of R.F. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 944–45 (4th Cir. 1967) ("Although *Frow* was a case of joint liability, we think the procedure established for multiple defendants" is "applicable not only to situations of joint liability but to those where the liability is joint and/or several"); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2690 (4th ed. 2016) (stating that *Frow* "probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses."). Just as it would be inappropriate to grant a default judgment against one defendant, only to then dismiss the same claims against similarly situated defendants on the merits, it would be inappropriate to grant a motion to dismiss for several defendants but later order a default judgment against a similarly situated party.

Here, Mickerson has not moved for a clerk's entry of default against EMC despite its failure to enter a responsive pleading for over 10 months. The allegations against EMC in the Amended Complaint are substantially the same as those against the Moving Defendants. EMC, were it to appear, could avail itself of the same defenses as the Moving Defendants, including the defenses upon which the Motion to Dismiss was granted. Having granted the Motion to Dismiss

16

for the Moving Defendants, the Court, under *Frow*, would not grant a default judgment against EMC and thus must dismiss Mickerson's claims against EMC as well.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED. A separate Order shall issue.

Date: February 28, 2018

THEODORE D. CHUANG
United States District Judge